FILED & ENTERED

MAR 01 2016

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bakchell  DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>PARAVANEH OBEDIAN,<br><br>            Debtor. | Case No. 2:14-bk-24247-RK<br><br>Chapter 7<br><br>**MEMORANDUM DECISION ON DEBTOR'S MOTION TO AVOID LIEN OF CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES** |

      Pending before the court is the Motion to Avoid Lien under 11 U.S.C. § 522(f) (the "Motion") of Debtor Paravaneh Obedian ("Debtor").  ECF 108.  The Motion seeks to avoid the judgment lien of the California Department of Health Care Services ("DHCS") against certain real property located at 9476 Hidden Valley Place, Beverly Hills, Los Angeles County, California 90210, Assessor's Parcel Number 4388-002-021 (the "Real Property").

      After Debtor and her non-debtor spouse, Fred Obedian ("Mr. Obedian"), bought the Real Property in 2009, on February 3, 2011, a judgment was entered by the Superior Court of California, County of Sacramento, in favor of DHCS and against Mr. Obedian in the amount of $729,890.29.  DHCS recorded an abstract of judgment on February 22, 2011 with the Recorder of Los Angeles County, California, to perfect its judgment lien

1  against the Real Property.  Motion at Exhibit D.  Debtor now seeks to avoid DHCS's

2  judgment lien through the Motion.

3           Wesley H. Avery, the Chapter 7 Trustee ("Trustee") of Debtor's bankruptcy estate,

4  filed an opposition to the Motion, ECF 111, and the United States of America, on behalf

5  of its agency, the Internal Revenue Service (the "United States"), filed an objection to the

6  Motion, ECF 114.  Debtor filed a reply to Trustee's opposition and the United States'

7  objection.  ECF 120.  DHCS also filed an opposition to the Motion.  ECF 122.

8           The Motion initially came on for hearing before the undersigned United States

9  Bankruptcy Judge on November 24, 2015.  The court determined at this hearing that

10 because the Motion raised disputed factual and legal issues regarding the nature of

11 Debtor's interest in the Real Property, and thus, whether DHCS's judgment lien attached

12 to Debtor's interest in the Real Property, the Motion would be treated as a contested

13 matter under Federal Rule of Bankruptcy Procedure 9014.  Thereupon, the court set a

14 schedule for further briefing and continued the hearing to January 5, 2016.  Debtor filed a

15 supplemental brief to its Motion, ECF 129, and Trustee filed a supplemental brief to its

16 opposition, ECF 130.  At the further hearing on the Motion on January 5, 2016, the court

17 determined that the evidence attached to Debtor's supplement raised a genuine issue of

18 material fact regarding whether the Real Property is community property and set the

19 Motion for an evidentiary hearing on January 12, 2016.

20          At the evidentiary hearing on January 12, 2016, M. Jonathan Hayes, of the law

21 firm of Simon Resnik Hayes LLP, appeared on behalf of Debtor, and Robert A. Hessling,

22 of the law firm of Robert A. Hessling, APC, appeared on behalf of Trustee.  Following the

23 evidentiary hearing, the court authorized the parties to file further supplemental briefing.

24 On January 19, 2016, Debtor filed a supplemental brief styled Closing Argument of

25 Movant Paravanah Obedian, ECF 133, and on January 26, 2016, Trustee filed his

26 Second Supplemental Opposition to Motion of Debtor to Avoid Lien under 11 U.S.C. §

27 522(f), ECF 135.  After Debtor and Trustee filed their supplemental briefing, the court

28

1  took the matter under submission.  On February 2, 2016, DHCS filed a joinder to

2  Trustee's Second Supplemental Opposition to Motion of Debtor to Avoid Lien Under 11

3  U.S.C. § 522(f).  ECF 136.

4      Having considered the moving and opposing papers, the exhibits and declarations

5  attached therein, the parties' oral arguments, the evidence presented at the January 12,

6  2016 evidentiary hearing, the parties' supplemental briefs, and the record before the

7  court, the court makes the following findings of fact and conclusions of law pursuant to

8  Rules 9014 and 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52 of the

9  Federal Rules of Civil Procedure and rules as follows.

10                                    **DISCUSSION**

11      In order to decide whether Debtor can avoid the judgment lien of DHCS under

12  11 U.S.C. § 522(f), the court must first determine as a preliminary matter the nature of

13  Debtor's interest in the Real Property because the DHCS judgment was entered against

14  Mr. Obedian, and not against Debtor herself, raising the issue of whether the DHCS

15  judgment lien attached to Debtor's interest in the Real Property, which is property of the

16  estate in this bankruptcy case under 11 U.S.C. § 541(a) as an interest of the Debtor as of

17  the commencement of the case.  That is, if Debtor's interest in the Real Property was

18  community property, the judgment lien against Mr. Obedian would attach to both

19  spouses' interests in the Real Property, but if Debtor's interest in the Real Property was

20  separate property as indicated by record title of the Real Property in Debtor and Mr.

21  Obedian in joint tenancy, then the judgment lien against Mr. Obedian would only attach to

22  Mr. Obedian's one-half joint tenancy interest, which would not be an asset of Debtor's

23  bankruptcy estate, and not Debtor's one-half joint tenancy interest, thus making the

24  judgment lien not avoidable by Debtor.  *Compare* 2 Ahart, *California Practice Guide:*

25  *Enforcing Judgments and Debts*, ¶ 6:166 at 6B-6 (2015) ("A judgment lien attaches to the

26  interests of *both spouses* in community real property, since all community property

27  interests are subject to enforcement of the judgment.") (emphasis in original) *citing*

28

3

California Code of Civil Procedure §§ 695.020 and 697.310, *with id.* at ¶ 6:167 at 6B-6 ("Only the interest of the debtor joint tenant is subject to a judgment lien") *citing Dang v. Smith*, 190 Cal.App.4th 646, 659-660 (2010).  This is an issue of property characterization which is a matter of state law.  *See* 4 March, Ahart and Shapiro, *California Practice Guide: Bankruptcy,* ¶ 6:3 at 6-1 – 6-2 (2015), *citing inter alia, Butner v. United States,* 440 U.S. 48, 54 (1979) ("State law determines whether a particular right, power or interest is 'property' and the nature and extent of the debtor's interest therein.").

The Real Property is located in California, and its characterization is governed by California law.  In California, "[g]enerally speaking, property characterization depends on three factors: (1) the time of acquisition; (2) the 'operation of various presumptions, particularly those concerning the form of title'; and (3) the determination 'whether the spouses have transmuted' the property in question, thereby changing its character."  *In re Marriage of Rossin*, 172 Cal.App.4th 725, 732 (2009) (internal citations omitted).

**I.     AT THE TIME THE REAL PROPERTY WAS ACQUIRED BY DEBTOR AND MR. OBEDIAN, THE REAL PROPERTY WAS COMMUNITY PROPERTY**

On one hand, under California Family Code § 770, property that one spouse owned before the marriage is deemed to be that spouse's separate property.  *See In re Marriage of Valli,* 58 Cal.4th 1396, 1399-1400 (2014).  On the other hand, California Family Code § 760 sets forth an evidentiary presumption that property acquired by a spouse during the marriage is deemed to be community property.  *See also, In re Marriage of Valli,* 58 Cal.4th at 1400; *In re Summers,* 332 F.3d 1240, 1242-1243 (9th Cir. 2003), *citing, In re Marriage of Haines,* 33 Cal.App.4th 277, 289-290 (1995).  This community property presumption under California law can be rebutted if the property's acquisition is (1) traceable to a separate property source, (2) acquired by gift or bequest, or (3) earned or accumulated while the spouses are living separate and apart.  *In re Marriage of Valli,* 58 Cal.4th at 1400, *citing inter alia, In re Marriage of Lucas,* 27 Cal.3d 808, 815 (1980) and California Family Code §§ 770 and 771.  The standard of proof

4

required to rebut the community property presumption under California Family Code §

760 is the preponderance of the evidence.  *In re Marriage of Valli,* 58 Cal.4th at 1400,

*citing In re Marriage of Ettefagh*, 150 Cal.App.4th 1578, 1591 (2007).

Debtor and Mr. Obedian were married in 1972.  *Supplement to Debtor's Motion to*

*Avoid Lien Pursuant to Section 522(f), Declaration of Paravaneh Obedian in Support*

*Thereof* at 5; *Testimony of Paravaneh Obedian*, January 12, 2016, at 3:28 p.m.;

*Testimony of Fred Obedian*, January 12, 2016, at 3:41 p.m.  Debtor testified that in 1997,

during their marriage, Debtor and Mr. Obedian purchased a parcel of real property in

Tarzana, California as their prior residence with community property funds and

subsequently made the mortgage payments on the Tarzana house with income from

Debtor and Mr. Obedian's medical supply business.  *Testimony of Paravaneh Obedian*,

January 12, 2016, at 3:29-3:30 p.m.  After selling the Tarzana property, in 2009 during

their marriage, Debtor and Mr. Obedian used the proceeds from the sale of the Tarzana

house as a down payment to buy the Real Property, which they took record title to as

joint tenants.  *Request for Judicial Notice in Support of California Department of Health*

*Care Services' Opposition to Debtor's Motion to Avoid Lien Under 11 U.S.C. § 522(f)*,

Exhibit A, ECF 123; *Testimony of Fred Obedian*, January 12, 2016, at 3:43 p.m.   Debtor

and Mr. Obedian testified at the evidentiary hearing that although they had taken title to

the Real Property as joint tenants as indicated on the grant deed, they did not request

this and said that taking title in joint tenancy was something the real estate agent did

without their understanding.  *Testimony of Paravaneh Obedian*, January 12, 2016, at

3:31-3:32 p.m.; *Testimony of Fred Obedian*, January 12, 2016, at 3:44-3:45 p.m.  The

grant deed transferring the Real Property to Debtor and Mr. Obedian stated that they

were taking title as joint tenants, but there was no separate statement on the grant deed

indicating that this was their express intention.  *Request for Judicial Notice in Support of*

*California Department of Health Care Services's Opposition to Debtor's Motion to Avoid*

*Lien Under 11 U.S.C. § 522(f)*, Exhibit A, ECF 123.  Debtor and Mr. Obedian testified at

1   the evidentiary hearing that they paid the mortgage on the Real Property with their

2   community property income from their medical supply business.  *Testimony of Paravaneh*

3   *Obedian*, January 12, 2016, at 3:29-3:30 p.m.; *Testimony of Fred Obedian*, January 12,

4   2016, at 3:43 p.m.  Debtor testified that she did not receive any inheritance during their

5   marriage. *Testimony of Paravaneh Obedian*, January 12, 2016, at 3:29 p.m.  Mr. Obedian

6   testified that although he did receive an inheritance during marriage, that inheritance was

7   property located in Iran and not the Real Property, the subject of the Motion.  *Testimony*

8   *of Fred Obedian*, January 12, 2016, at 3:43 p.m.  Although Debtor and Mr. Obedian are

9   currently undergoing marital dissolution proceedings, there is no evidence in the record to

10  show that Debtor and Mr. Obedian ever lived separate and apart when they bought the

11  Real Property in 2009, when they made the mortgage payments on this property, and

12  when the DHCS judgment lien against Mr. Obedian attached to their community property

13  in 2011 through recordation of an abstract of a money judgment with the Los Angeles

14  County Recorder.  California Family Code § 910(a) and (b) (generally "the community

15  estate is liable for a debt incurred by either spouse before or during marriage [except

16  while living separate and apart], regardless of which spouse has management and

17  control of the property and regardless of whether one or both spouses are parties to the

18  debt or to a judgment for the debt"); California Code of Civil Procedure § 697.310(a)

19  (recording abstract of judgment in county where property is situated creates a judgment

20  lien against real property).

21          Based on California Family Code § 760, the court preliminarily determines that the

22  evidence admitted at the evidentiary hearing indicates that the Real Property should be

23  presumed to be community property belonging to both Debtor and Mr. Obedian since the

24  Real Property was acquired by both spouses during marriage and the exceptions of

25  acquisition of property traceable to a separate property source, acquired by gift or

26  bequest, or earned or accumulated while the spouses are living separate and apart, do

27  not apply.  *In re Marriage of Valli,* 58 Cal.4th at 1400 (citations omitted).  Debtor and Mr.

28

1    Obedian acquired the Real Property during their marriage with community property funds

2    and no evidence was presented that would rebut the community property presumption

3    through tracing or earnings or accumulations while Debtor and Mr. Obedian were living

4    separate and apart.  Although Mr. Obedian testified that he received an inheritance

5    during marriage, his inherited property was some other property and not the Real

6    Property.  Thus, under the community property presumption of California Family Code §

7    760, at the time of acquisition, the Real Property was community property.

8    II.    **BASED ON THE CALIFORNIA SUPREME COURT'S DECISION IN *IN RE***

9    ***VALLI*, CALIFORNIA'S MARITAL PROPERTY TRANSMUTATION STATUTES**

10    **TRUMP CALIFORNIA'S GENERAL PRESUMPTION OF RECORD TITLE**

11    Although time of acquisition generally controls the characterization of property,

12    evidentiary presumptions and marital property transmutation transactions may also affect

13    the analysis.  *See In re Marriage of Rossin*, 172 Cal.App.4th 725, 733 (2009).  Thus, the

14    court also considers the applicability of California Family Code § 852(a), California's

15    marital property transmutation statute, and California Evidence Code § 662, California's

16    general presumption of record title.

17    Under California Family Code § 852(a), "[a] transmutation of real or personal

18    property is not valid unless made in writing by an express declaration that is made, joined

19    in, consented to, or accepted by the non-debtor spouse whose interest in the property is

20    adversely affected."  At the evidentiary hearing and in her Closing Argument brief, ECF

21    133, Debtor argues that she and Mr. Obedian never validly transmuted the property

22    because there was no express declaration in writing that changed the character of both

23    the community property sale proceeds from the sale of the Tarzana house and the

24    community property mortgage payments on the Real Property to separate property.

25    Thus, Debtor argues that under the California marital property transmutation statute, the

26    Real Property is community property.  Nonetheless, Debtor's argument conflicts with

27    California Evidence Code § 662, which provides that "[t]he owner of the legal title to

28

7

1  property is presumed to be the owner of the full beneficial title." It is an undisputed fact

2  that Debtor and Mr. Obedian, took record title to the Real Property as joint tenants.

3  *Request for Judicial Notice in Support of California Department of Health Care Services'*

4  *Opposition to Debtor's Motion to Avoid Lien Under 11 U.S.C. § 522(f)*, Exhibit A, ECF

5  123; *Testimony of Fred Obedian*, January 12, 2016, at 3:43 p.m. At the evidentiary

6  hearing and in his post-trial brief, ECF 135, Trustee argues that because the grant deed

7  conveyed the Real Property to Debtor and Mr. Obedian as joint tenants, they own the

8  Real Property as joint tenants with each having a one-half separate property interest.

9  Because application of both California Family Code § 852(a) and California Evidence

10  Code § 662 as statutory exemptions to California Family Code § 760 yields conflicting

11  characterizations of the Real Property, the court must thus determine which rule to apply.

12        The Ninth Circuit in *In re Summers*, construing California family law in the context

13  of a bankruptcy case as opposed to a marital dissolution case and determining whether

14  real property transferred by a third party to a husband, a wife and a daughter as joint

15  tenants constituted property of the bankruptcy estate of one of the spouses, held that the

16  marital property transmutation statute in California Family Code § 852(a) does not apply

17  when a married couple acquires real property from a third party as joint tenants. 332

18  F.3d at 1240, 1245. The bankruptcy court in *Summers* held that the real property

19  acquired by the husband and wife during marriage with record title as joint tenants was

20  not community property so that the husband's separate property interest was not

21  included in the wife's Chapter 7 bankruptcy estate, and the Chapter 7 bankruptcy trustee

22  appealed to the Bankruptcy Appellate Panel, which affirmed. *Id.* at 1242. The trustee

23  appealed to the Ninth Circuit, which also affirmed. *Id.* The Ninth Circuit held that the

24  general presumption under California law that property acquired by a married couple

25  during marriage is community property was rebutted by a third party deed specifying

26  record title in the property as joint tenants and that the statutory formalities of the

27

28

1  California marital property transmutation statute were inapplicable to transactions where

2  a spouse acquires property during marriage from a third party. *Id.* at 1242-1245.

3      The Ninth Circuit in *Summers* acknowledged that under California family law, there

4  is a general evidentiary presumption under California Family Code § 760 that "'property

5  acquired during marriage by either spouse other than by gift or inheritance is community

6  property unless traceable to a separate property source,'" but that this presumption is

7  rebuttable. *Id.* at 1242-1243, *quoting, In re Marriage of Haines,* 33 Cal.App.4th at 289-

8  290.  In noting that this community property presumption is rebuttable, the Ninth Circuit

9  noted that a California Court of Appeal in *In re Marriage of Tucker,* 141 Cal.App.3d 128

10 (1983), concluded that "'[i]n particular, when such property was acquired and title taken in

11 joint tenancy during marriage, it is presumed to be community property; that presumption

12 can be rebutted only by a showing of an agreement or understanding to the contrary.'"

13 332 F.3d at 1243, *quoting, In re Marriage of Tucker,* 141 Cal.App.3d at 132.

14     In *Summers,* the Ninth Circuit quoted another California Court of Appeal in *In re*

15 *Marriage of Haines* regarding what evidentiary showing would be needed to rebut the

16 general community property presumption under California Family Code § 760:

17

18     [V]irtually any credible evidence may be used to overcome [the general community property presumption], including . . . showing an agreement or clear understanding between parties regarding ownership status . . . For

19     example, spouses can indicate their intent with respect to the character of the property initially by specifying the form of title in which it is held, or

20     spouses can later transmute the character of the property as between each other.

21

22 332 F.3d at 1243, *quoting, In re Marriage of Haines,* 33 Cal.App.4th at 290-291.

23 Following this quotation, the Ninth Circuit quoted another California Court of Appeal on

24 the effect of the form of title in a written instrument for acquiring property during marriage:

25 "'[P]roperty which is acquired by a husband and wife by a written instrument in which they

26 are so described is presumed to be community property *unless the instrument specifically*

27

28

1   *states otherwise.'"*  332 F.3d at 1243, *quoting, Estate of Petersen,* 28 Cal.App.4th 1742,

2   1747 (1994) (emphasis in original).

3          The Ninth Circuit in *Summers* thus concluded that "California law supports the

4   bankruptcy court's and the BAP's conclusion that the community property presumption is

5   rebutted when a married couple acquires property from a third party as joint tenants."

6   332 F.3d at 1242.  The Ninth Circuit quoted with approval the statements of the California

7   Courts of Appeal in *In re Marriage of Haines*: "'[A]bsent a contrary statute, and unless

8   ownership interests are otherwise established by sufficient proof, record title is usually

9   determinative of characterization," *In re Summers,* 332 F.3d at 1243, *quoting, In re*

10  *Marriage of Haines,* 33 Cal.App.4th at 291, and in *Estate of Peterson,* "Where '[t]he grant

11  deed specifically states the property is joint tenancy property,' this 'rebuts the community

12  property presumption,'" *In re Summers,* 332 F.3d at 1243, *quoting, Estate of Peterson,* 28

13  Cal.App.4th at 1747;  *see also, id., also citing inter alia, Rhoads v. Jordan (In re Rhoads),*

14  130 B.R. 565, 567 (Bankr. C.D. Cal. 1991) ("A declaration in a deed or other title

15  instrument that the parties take the subject property as joint tenants raises a presumption

16  that the married couple intended to take title in joint tenancy."); California Evidence Code

17  § 662 (general evidentiary presumption that the record title shows beneficial ownership:

18  "The owner of the legal title to property is presumed to be the owner of full beneficial title.

19  This presumption may be rebutted only by clear and convincing proof.").

20         Having concluded that record title of joint tenancy in property acquired by a

21  married couple during marriage rebuts the general community property presumption, the

22  analysis is not completed according to the Ninth Circuit in *Summers* because then

23  "[t]here is therefore a rebuttable presumption that 'where the deed names the spouses as

24  joint tenants . . . the property was in fact held in joint tenancy . . . .'"  332 F.3d at 1244,

25  *quoting Hansen v. Hansen,* 233 Cal.App.2d 575, 594 (1965).  Nonetheless, although the

26  Ninth Circuit in *Summers* observed that the record title presumption of joint tenancy is not

27  rebutted solely by tracing the source of the funds to community property, 332 F.3d at

28

1244, *citing inter alia, Hansford v. Lasar,* 53 Cal.App.3d 364, 372 (1975), the Ninth Circuit

did not further clarify how to rebut the record title presumption of joint tenancy.  *See* 332

F.3d 1240.

In *Summers,* a party argued that the subject real property was community property

because the requirements of California Family Code § 852(a), California's marital

property transmutation statute, were not satisfied.  332 F.3d at 1244-1245.  California

Family Code § 852(a) provides that "[a] transmutation of real or personal property is not

valid unless made in writing by an express declaration that is made, joined in, consented

to, or accepted by the spouse whose interest in the property is adversely affected."  The

Ninth Circuit rejected the argument, stating that the California marital property

transmutation statute could not be used to rebut the record title presumption of joint

tenancy when a spouse or a married couple acquired title to property during marriage in

joint tenancy because the transmutation statute was limited to interspousal transactions,

that is, according to the Ninth Circuit, only transactions between the spouses themselves,

and not purchases of property from a third party.  332 F.3d at 1244-1245, *citing inter alia,*

*In re Marriage of Haines,* 33 Cal.App.4th at 284, 293.  As stated by the Ninth Circuit in

*Summers*:

> Our reading of California law leads to the conclusion that the transmutation requisites had no relevance to the conveyance in this case.  There simply was no interspousal transaction requiring satisfaction of statutory formalities . . . .  Applying California law, we conclude that a third party conveyed joint tenancy interests to Eugene and Ann Marie Summers, a transaction to which the transmutation statute does not apply.  The third-party deed specifying the joint tenancy character of the property rebutted the community property presumption, and rendered California's transmutation statute inapplicable.

*In re Summers,* 332 F.3d at 1245, *citing inter alia, In re Marriage of Cross,* 94 Cal.App.4th

1143, 1147 (2001).

In *In re Marriage of Valli*, the California Supreme Court subsequently held in a

unanimous opinion by Justice Kennard that in a marital dissolution proceeding,

acquisitions of property made by one or both spouses from a third party during marriage are not exempt from the marital property transmutation statutes for transmuting community property to separate property and unless the requirements of these statutes are met, property acquired during marriage is community property.  58 Cal.4th at 1399-1407; *see also, id.* at 1407-1414 (Chin, J., concurring).  The facts in *Valli* as recited by the California Supreme Court were the following: "During a marriage the husband used community property funds to purchase an insurance policy on his life, naming his wife as the policy's only owner and beneficiary," raising the question of whether "Upon dissolution of the marriage, is the life insurance policy community property or the wife's separate property?"  *Id.* at 1399.  The California Supreme Court held that "unless the statutory transmutation requirements have been met, the life insurance policy is community property."  *Id.*

In reaching this conclusion, the California Supreme Court in *Valli* examined and gave recognition to the legislative history and purposes of the marital property transmutation statutes, which were to reduce excessive litigation, introduction of unreliable evidence, and incentives for perjury in marital dissolution proceedings involving disputes regarding the characterization of property.  *Id.* at 1401-1402, 1405.  The *Valli* court specifically observed:

> The Legislature adopted the statutory transmutation requirements in 1984 upon a recommendation of the California Law Revision Commission. (*Estate of Macdonald,* [(1990)] 51 Cal.3d [262] at 268, 272 Cal.Rptr. 153, 794 P.2d 911.)  In its report to the Legislature, the commission observed that under then existing law it was "'quite easy for spouses to transmute both real and personal property'" because a transmutation could be proved by evidence of an oral agreement between the spouses or by "'implications from the conduct of the spouses.'" (*Id.* at p. 269, 272 Cal.Rptr. 153, 794 P.2d 911.)  This "'rule of easy transmutation . . . generated extensive litigation in dissolution proceedings'" where it encouraged spouses "'to transform a passing comment into an "agreement" or even to commit perjury by manufacturing oral or implied transmutation.'" (*Ibid.*) As this court has concluded, therefore, in adopting the statutory transmutation requirements the Legislature intended to "to remedy problems which arose when courts found transmutations on the basis of evidence the Legislature considered unreliable." (*Ibid.*; accord, *In re Marriage of Benson,* [(2005)] 36 Cal.4th [1096] at p. 1106, 32 Cal.Rptr.3d 471, 116 P.3d 1152 [the

1

2

transmutation statute "blocks efforts to transmute marital property based on evidence—oral, behavioral, or documentary—that is easily manipulated or unreliable"].)

3  *Id.* at 1401.  Aside from the problem of easy manipulation of oral or implied property

4  transmutations, the *Valli* court also recognized the difficulty of determining property

5  characterization based on the assessment of the credibility of the spouses as witnesses,

6  which is a problem that the transmutation statutes were designed to avoid in creating a

7  bright-line test of property characterization.  *Id.* at 1403.

8  In the context of the statutory framework of the marital property transmutation

9  statutes, the California Supreme Court in *Valli* then addressed some court decisions

10  stating that a transmutation required an interspousal transaction, but that a spouse's

11  acquisition of an asset from a third party was not an interspousal transaction and thus

12  was exempt from the transmutation requirements.  *Id.* at 1404.  The *Valli* court stated that

13  the Court of Appeal in *In re Marriage of Haines,* had given a definition of a transmutation

14  as "an interspousal transaction or agreement which works a change in the character of

15  the property."  *In re Marriage of Valli,* 58 Cal.4th at 1404, *citing In re Marriage of Haines,*

16  33 Cal.App.4th at 293.

17  While the court in *Valli* acknowledged that it had also stated in a prior opinion that

18  it had also defined a transmutation as an "interspousal transaction," it "did not consider

19  whether this definition excludes spousal purchases during the marriage from third parties

20  with community funds."  58 Cal.4th at 1404, *citing, In re Marriage of Benson,* 36 Cal.4th

21  at 1100.   As discussed in *Valli,* this specifically was the situation addressed by the Ninth

22  Circuit in *Summers.*  58 Cal.4th at 1404-1405, *citing and discussing, In re Summers,* 332

23  F.3d at 1242, 1245.

24  In discussing *Summers,* the California Supreme Court in *Valli* noted that it was

25  "[t]he first decision to hold that a spousal purchase from a third party during a marriage

26  was not subject to the statutory transmutation requirements" and further noted that it "was

27  a bankruptcy proceeding rather than a martial dissolution proceeding."  *In re Marriage of*

28

1  *Valli,* 58 Cal.4th at 1404.  The *Valli* court observed that in *Summers,* "the federal

2  appellate court was attempting to construe and apply California law 'to determine whether

3  the requirements of California's transmutation statute . . . must be met when realty is

4  transferred from a third party to spouses as joint tenants" and that "the federal court

5  concluded 'that the transmutation requisites had no relevance to the conveyance in this

6  case.'"  *Id.* 1404-1405*, quoting, In re Summers,* 332 F.3d at 1242, 1245.

7      Next, the California Supreme Court in *Valli* noted that "[t]he year 2008 saw the first

8  decision by a California state appellate court exempting from the transmutation

9  requirements a spousal purchase from a third party" in *In re Marriage of Brooks &*

10  *Robinson,* 169 Cal.App.4th 176 (2008), which was a marital dissolution proceeding where

11  "the husband and the wife disputed ownership of residential property [which] they had

12  purchased during marriage, taking title solely in the wife's name."  *In re Marriage of Valli,*

13  58 Cal.4th at 1405, *citing, In re Marriage of Brooks & Robinson,* 169 Cal.App.4th at 179-

14  180.  In *Brooks & Robinson,* the husband argued that the purchase of the property in the

15  wife's name only was an attempted transmutation which was invalid because it did not

16  comply with California's statutory marital transmutation requirements, but the state

17  appellate court rejected the argument, stating that there were "'no facts suggesting a

18  transmutation, valid or otherwise' because the property 'was acquired in [the wife's] name

19  in a transaction with a third person, not through an interspousal transaction.'"  *Id.*

20      In analyzing the decisions in *Summers* and *Brooks & Robinson,* the California

21  Supreme Court in *Valli* concluded that those decisions "are not persuasive insofar as they

22  purport to exempt from the transmutation requirements purchases made by one or both

23  spouses from a third party during marriage."  *Id.*  The *Valli* court stated three reasons why

24  *Summers* and *Brooks & Robinson* were unpersuasive:

25

26      Neither decision attempts to reconcile such an exemption with the legislative
    purposes in enacting those requirements, which was to reduce excessive
    litigation, introduction of unreliable evidence, and incentives for perjury in

27  marital    dissolutions    proceedings    involving    disputes    regarding
    characterization of property.  Nor does either decision attempt to find a

28

basis for the purported exemption in the language of the applicable transmutation statutes.  Also, these decisions are inconsistent with three Court of Appeal decisions stating or holding that the transmutation requirements apply to one spouse's purchases from a third party during the marriage.

*In re Marriage of Valli,* 58 Cal.4th at 1405, *citing, In re Marriage of Buie & Neighbors,* 179 Cal.App.4th 1170, 1173-1175 (2009), *In re Marriage of Cross,* 94 Cal.App.4th 1143, 1147–1148 (2001) and *In re Marriage of Steinberger,* 91 Cal.App.4th 1449, 1463–1466 (2001).

The California Supreme Court in *Valli* gave a further reason based on the language of California Family Code § 852(a) for not exempting third party transactions for acquisition of property with one spouse or both spouses during a marriage from the statutory formalities of martial property transmutation:

> Our examination of the statutory language leads us to reject the purported exemption for spousal purchases from third parties.  As we have said, the transmutation statutes provide an express exemption for gifts of relatively inexpensive personal items.  (Fam. Code, § 852(a), subd. (c)).  Because spouses most often use community funds to purchase such gifts for each other, the statutory exemption necessarily implies that gifts not qualifying for the exemption (because they are "substantial in value" or because they are not items "of a personal nature") *are* transmutations subject to the express declaration requirement, notwithstanding that a great many, if not most, involve purchases from third parties.

58 Cal.4th at 1405-1406 (citation and footnote omitted; emphasis in original).  In a footnote to this quoted text, the court observed:

> Enactment of the transmutation statues (Fam. Code, §§ 850-853) abrogated earlier judicial decisions that were inconsistent with statutory requirements. One such decision was *In re Marriage of Lucas, supra,* 27 Cal. 808, 166 Cal.Rptr. 853, 614 P.2d 285, in which this court upheld a trial court's characterization of a motor home acquired during a marriage as entirely the wife's separate property.  From the husband's failure to object when title was taken in the wife's name alone the trial court inferred that the husband had made a gift to the wife of his interest in community funds used to purchase the motor home.  (*In re Marriage of Lucas,* at pp. 817-818, 166 Cal.Rptr. 853, 614 P.2d 285.)  That portion of the decision is no longer good law.

*Id.* at 1406 n. 2.

1    The California Supreme Court in *Valli* then addressed the reliance of the Court of

2  Appeal on the general evidentiary presumption of California Evidence Code § 662 that

3  record title indicated full beneficial ownership in holding that the California marital

4  property transmutation statute in California Family Code § 852(a) did not apply:

> As mentioned, the Court of Appeal here concluded that the transmutation statutes were 'not relevant to this case' because the disputed life insurance policy 'was acquired from a third party and not through an interspousal transaction.'  After stating that conclusion, which we have determined to be erroneous, the court added: 'Moreover, [wife] did not contend in the trial court, and does not contend on appeal, that the policy is her separate property through transmutation.  Instead, [wife] contends that the policy is her separate property by operation of the form of title presumption.' Referring to Evidence Code section 662, which states that '[t]he owner of the legal title to property is presumed to be the owner of the full beneficial title,' the Court of Appeal here asserted that 'because the form of title presumption applies . . . a transmutation theory is not involved.'  This reasoning by the Court of Appeal, we also conclude, is erroneous.  We need not and do not decide here whether Evidence Code section 662's form of title presumption ever applies in marital dissolution proceedings. Assuming for the sake of argument that the title presumption may sometimes apply, it does not apply when it conflicts with the transmutation statutes.

*Id.* at 1405-1406 (citation omitted); *see also, id.* at 1413 (concurring opinion of Chin, J.,

suggesting that the purpose of California Evidence Code § 662 of "promoting the stability

of titles to property . . . [u]nlike in the case of an action between the spouses . . . *does*

play a role in a dispute between a spouse and an innocent third party purchaser"

(emphasis in original).

    This court must determine whether it should follow the Ninth Circuit's decision in

*Summers* or the California Supreme Court's decision in *Valli* in applying California law in

determining the character of the Real Property as joint tenancy separate property as

record title shows or community property based on application of the general community

property presumption because these decisions conflict as to the applicability of the

marital property transmutation statute in California Family Code § 852(a) to spousal

property purchases from third parties.  "In general, prior Ninth Circuit published authority

is binding within the Circuit to the same extent as is Supreme Court precedent."  2 Goelz,

Watts and Batalden, *Rutter Group Practice Guide: Federal Ninth Circuit Civil Appellate Practice*, ¶ 8:154 at 8-22 (2015), *citing inter alia, Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001).  "In resolving an issue of state law, a Ninth Circuit panel ordinarily should follow the holding of a prior panel on that issue.  But if state courts subsequently disagreed with the prior panel, the later Ninth Circuit panel is not bound to follow the prior panel."  2 Goelz, Watts and Batalden, *Rutter Group Practice Guide: Federal Ninth Circuit Civil Appellate Practice*, ¶ 8:205.3 at 8-44, *citing inter alia, F.D.I.C. v. McSweeney*, 976 F.2d 532, 535-536 (9th Cir. 1992).  Moreover, in interpreting state law, the Ninth Circuit must follow the decisions of the state's highest court.  2 Goelz, Watts and Batalden, *Rutter Group Practice Guide: Federal Ninth Circuit Civil Appellate Practice*, ¶ 8:204 at 8-41, *citing inter alia, Johnson v. Fankell*, 520 U.S. 911, 916 (1997) ("Neither this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State.") and *Muniz v. United Parcel Service, Inc.*, 738 F.3d 214, 219 (9th Cir. 2013),  In *Muniz v. United Parcel Service, Inc.*, the Ninth Circuit stated that "[d]ecisions of the California Supreme Court, including reasoned dicta, are binding on us as to California law."  738 F.3d at 219.

"The line between dictum and precedent in a judicial opinion 'is not always easy to draw.'"  2 Goelz, Watts and Batalden, *Rutter Group Practice Guide: Federal Ninth Circuit Civil Appellate Practice*, ¶ 8:176.1 at 8-31, *quoting Cetacean Community v. Bush*, 386 F.3d 1169, 1173 (9th Cir. 2004).  *Valli* involved a marital dissolution proceeding between the spouses and not with a third party.  58 Cal.4th at 1406.  Nonetheless, the California Supreme Court in *Valli* stated its express disagreement with the Ninth Circuit's reasoning in *Summers*, observing that *Summers*, in exempting a spousal purchase from a third party from the marital property transmutation requirements of California law, failed to reconcile the exemption in the property transmutation statutes with their legislative purposes, failed to find a basis for the exemption in the statute's language, and was inconsistent with three California Court of Appeals decisions that stated or held that the

transmutation statutes applied to one spouse's purchases from a third party during

marriage.  *Id.* at 1405.  As a result, the court determines that, at a minimum, the language

in the California Supreme Court's opinion in *Valli* constitutes "reasoned" dicta.  Therefore,

under case precedent, such as *Muniz v. United Parcel Service, Inc.*, the court should

follow the state's highest court in *Valli* in interpreting California law rather than *Summers*.

Accordingly, in this case, the court applies the community property presumption

in California Family Code § 760 and the marital property transmutation statute in

California Family Code § 852(a) as indicated by the California Supreme Court in *Valli*

rather than applying the general record title presumption in California Evidence Code §

662 and not applying the marital property transmutation statute as indicated by the Ninth

Circuit in *Summers*.  Thus, the court determines that the Real Property is community

property unless Trustee can rebut the evidentiary presumption under California Family

Code § 760 by proving by a preponderance of the evidence that Debtor and Mr. Obedian

transmuted the Real Property from community property pursuant to the requirements of

California Family Code § 852(a).

**III.    TRUSTEE HAS FAILED TO PROVE BY A PREPONDERANCE OF THE**

**EVIDENCE THAT DEBTOR AND MR. OBEDIAN TRANSMUTED THE REAL**

**PROPERTY FROM COMMUNITY PROPERTY TO SEPARATE PROPERTY**

As discussed herein, after receiving evidence at the evidentiary hearing, the

court finds that Trustee failed to show by a preponderance of the evidence that Debtor

and Mr. Obedian transmuted the character of the Real Property from community property

to separate property in order to rebut the California Family Code § 760 presumption that

the Real Property acquired by Debtor and Mr. Obedian during marriage in 2009 was

community property.  At the evidentiary hearing, Debtor and Mr. Obedian testified that

they purchased the Real Property in 2009 during their marriage, that record title they took

in the Real Property as joint tenants was not something they intentionally chose, but was

something that the real estate agents put down, that their understanding was that the

1    Real Property was community property as property acquired during their marriage, that

2    they made no contemporaneous agreement among themselves to specify that title was to

3    be taken as joint tenants and treated as separate property, that they used their

4    community property funds from the proceeds from the sale of their Tarzana house

5    acquired during marriage to make the down payment on the Real Property, that they

6    used their community property funds from the income from Mr. Obedian's community

7    property business generated during marriage to make the mortgage payments on the

8    Real Property, and that at no time did they intend to transmute the Real Property from

9    community property to separate property through any written agreements with each other

10   (i.e., the community funds used to purchase the Real Property were not transmuted into

11   separate property) in accordance with the statutory formalities of California Family Code

12   § 852(a).  *Testimony of Paravaneh Obedian*, January 12, 2016, at 3:29-3:32 p.m.;

13   *Testimony of Fred Obedian*, January 12, 2016, at 3:45-3:46 p.m.  The court finds

14   Debtor's and Mr. Obedian's testimony on these points at the evidentiary hearing credible.

15          At the evidentiary hearing, Trustee presented evidence that after the Real

16   Property was acquired, both Debtor and Mr. Obedian made separate statements that the

17   Real Property was held in joint tenancy.  On Schedule A to her bankruptcy petition,

18   Debtor listed the Real Property as being held in joint tenancy.  ECF 11.  Further, in

19   Trustee's separate adversary proceeding against Mr. Obedian for authorization to sell

20   real property of his co-owned interest, Adv. No. 2:14-ap-01698 RK, Mr. Obedian stated in

21   his answer that he held a 50% interest in the Real Property.  ECF 1 and 14.  On cross

22   examination, Debtor and Mr. Obedian testified that they were represented by a broker

23   when they purchased the Real Property in 2009 and that they signed the escrow

24   instructions.  *Testimony of Paravaneh Obedian*, January 12, 2016, at 3:33 p.m.

25   *Testimony of Fred Obedian*, January 12, 2016, at 3:46-3:47 p.m.  The court determines

26   that these statements separately or in total do not prove by a preponderance of the

27   evidence that Debtor and Mr. Obedian transmuted the Real Property from community

28

property in order to rebut the California Family Code § 760 presumption.  As Debtor explained about listing the Real Property as jointly owned rather than as community property on Schedule A, although she signed it, the schedule was prepared by her bankruptcy attorney, and Debtor did not understand what such listing meant.  While Debtor's signing Schedule A may be evidence as an admission, the probative effect of such admission is outweighed by the other evidence, especially the testimony of the witnesses and the other evidence surrounding the circumstances of the purchase of the Real Property by the parties.  In the court's view, the actual circumstances of the purchase transaction for the Real Property are probative.  As to Mr. Obedian's admissions in his answer in the separate adversary proceeding that he owned a 50% interest in the Real Property, because such admission is consistent with both having a 50% joint tenancy interest or a 50% community property interest, which one way or the other he has, Trustee's argument on this point does not have much force.  As to Debtor's and Mr. Obedian's admissions during cross examination that they were represented by a broker during the purchase transaction for the Real Property in 2009 and signed the escrow instructions which led to the grant deed stating that record title was in joint tenancy, as discussed herein, based on the totality of the circumstances, the parties did not fully understand the implications of record title, they lacked the requisite intent to alter what otherwise is presumed to be community property as property acquired during marriage and they had no intent to transmute the community property assets they used to purchase the Real Property with, specifically, the sale proceeds from their prior residence in the Tarzana house and the mortgage payments from their community property medical supply business.  Accordingly, the court finds that Trustee has failed to rebut the evidentiary presumption of California Family Code § 760 that the Real Property acquired during marriage is community property, and further finds that Debtor and Mr. Obedian own the Real Property as community property.

IV.    **BECAUSE THE DHCS LIEN IMPAIRS DEBTOR'S EXEMPTION UNDER 11**

**U.S.C. § 522(f)(2)(A), THE DHCS LIEN MAY BE AVOIDED UNDER 11 U.S.C. §**

**522(f)(1)**

11 U.S.C. § 522(f)(1) provides that "the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—(A) a judicial lien . . ." or "(B) a nonpossessory, nonpurchase-money security interest . . . ."  It is undisputed that the DHCS judgment lien is a judicial lien within the meaning of 11 U.S.C. § 522(f)(1).  Although the judgment was against Mr. Obedian alone, the judgment lien attached to the community property interests, including the Real Property of Debtor and Mr. Obedian because the judgment debt was incurred during marriage and not while living separate and apart and the judgment lien was created when an abstract of judgment was recorded in Los Angeles County in 2011 and attached to the community property of Debtor and Mr. Obedian, including the Real Property acquired in 2009 before the lien attached.  California Family Code § 910(a) and (b); California Code of Civil Procedure § 697.310(a); *In re Stoneking,* 225 B.R. 690, 692-695 (9th Cir. BAP 1998).

In determining whether a judicial lien impairs an exemption, under 11 U.S.C. § 522(f)(2)(A):

> a lien shall be considered to impair an exemption to the extent that the sum of–(i) the lien; (ii) all other liens on the property; and (iii) the amount of the exemption that the debtor could claim if there were no liens on the property; exceeds the value that the debtor's interest in the property would have in the absence of any liens.

As determined herein, the Real Property is the community property of Debtor and Mr. Obedian, and each of them has a 50 percent ownership interest in the Real Property.  California Family Code §751; *see also,* 2 Hogoboom and King, *California Practice Guide; Family Law,* ¶ 8:15 at 8-5 (2015).  Thus, Debtor has a fractional interest

21

in the Real Property, which requires a specific formula under 11 U.S.C. § 522(f) in

determining whether a judicial lien impairs a claimed homestead exemption by first

deducting the full amount of all consensual liens from the property's total value, then

deducting the amount of the homestead exemption from the debtor's equity interest and

then evaluating the attachment and impairment of judgment liens.  4 March, Ahart and

Shapiro, *California Practice Guide: Bankruptcy,* ¶ 21:1450 at 21-165, *citing inter alia, In re Meyer,* 373 B.R. 84, 90-91 (9th Cir. BAP 2007).

Debtor in her Motion asserts that the value of the Real Property was

$1,150,000.00 based on an appraisal by a licensed real property appraiser.  *Declaration of Paravaneh Obedian in Support of Motion to Avoid Lien under 11 U.S.C. § 522(f) Real Property*, ECF 108 at 5, and Exhibit I attached thereto.  There is no dispute over

valuation of the Real Property as there is no evidence from Trustee to contradict Debtor's

valuation evidence, and the court finds that the total value of the Real Property is

$1,150,000.00.  The undisputed evidence also indicates that the amount of a senior

consensual lien of Bank of America in a first deed of trust on the Real Property was

$969,942.00 based on the bank's stay relief motion.  *Declaration of Paravaneh Obedian in Support of Motion to Avoid Lien under 11 U.S.C. § 522(f) Real Property*, ECF 108 at 5,

and Exhibit B attached thereto.  Deducting the amount of this consensual lien of

$969,942.00 from the total value of the Real Property of $1,150,000.00 leaves a total net

equity of Debtor and Mr. Obedian in the Real Property of $180,057.60.  Thus, Debtor's

net equity from her 50 percent community property interest in the Real Property is

$90,028.80 ($180,057.60 ÷ 2 = $90,028.80).  On her Amended Schedule C, Debtor

declared a homestead exemption of $175,000.00 in the Real Property pursuant to

California Code of Civil Procedure § 704.730.  ECF 64.  Deducting Debtor's claimed

homestead exemption of $175,000.00 from her net equity in the Real Property of

$90,028.80 leaves negative value.   Such negative value indicates impairment of Debtor's

exemption on the Real Property from any judgment lien such as the DHCS lien.  *In re*

1  *Meyer,* 373 B.R. at 89 ("an exemption is impaired if subtracting all of the unavoidable

2  liens and the exemption (totaling $282,005) from the value of the debtor's half interest

3  ($257,500) yields zero or less"); *see also,* 4 March, Ahart and Shapiro, *California Practice*

4  *Guide: Bankruptcy,* ¶ 21:1450 at 21-165.   Also, looking at the literal language of 11

5  U.S.C. § 522(f)(1) that "a lien shall be considered to impair an exemption to the extent

6  that the sum of–(i) the lien; (ii) all other liens on the property; and (iii) the amount of the

7  exemption that the debtor could claim if there were no liens on the property; exceeds the

8  value that the debtor's interest in the property would have in the absence of any liens,"

9  impairment can be seen by adding the judgment lien of DHCS of $729,890.00, the Bank

10  of America first trust deed lien of $969,942.00 and Debtor's claimed homestead

11  exemption of $175,000 which total $1,874,832.00, and exceeds the value of Debtor's

12  interest in the Real Property (i.e., a 50 percent community property interest) in the

13  absence of such liens of $575,000.00 (total value of $1,150,000.00 ÷ 2 = $575,000.00).

14  4 March, Ahart and Shapiro, *California Practice Guide: Bankruptcy,* ¶ 21:1450 at 21-165,

15  *citing, In re White,* 337 B.R. 686, 689 (Bankr. N.D. Cal. 2005); *see also, In re Meyer,* 373

16  B.R. at 89-91.

17       Therefore, the court determines that based on this evidence, the DHCS

18  judgment lien impairs Debtor's homestead exemption under 11 U.S.C. § 522(f)(2)(A) and

19  may be avoided under 11 U.S.C. § 522(f)(1).  For the foregoing reasons, the court should

20  grant Debtor's Motion to Avoid the DHCS Lien.  A separate order granting the Motion is

21  being entered concurrently.

22       IT IS SO ORDERED.

23  Date: March 1, 2016

24  _____
    Robert Kwan
    United States Bankruptcy Judge

25

26

27

28